IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Richard Curtis Jenkins,<br>  Plaintiff, | )<br>)<br>) |
| v. | )  1:19cv395 (CMH/JFA)<br>) |
| Officer Culpeper,<br>  Defendant. | )<br>)<br>) |

MEMORANDUM OPINION

Before the Court is Officer Culpeper's ("defendant") Motion for Summary Judgment ("Motion") in this civil rights action initiated by Virginia state prisoner Richard Curtis Jenkins ("plaintiff"). [Dkt. Nos. 32-33]. After many extensions of time from the Court, plaintiff has retained counsel and filed an opposition to the Motion [Dkt. No. 52], to which defendant has replied [Dkt. No. 54]. Accordingly, defendant's Motion is fully briefed and ripe for disposition. For the reasons that follow, the Motion will be granted, and this action will be dismissed.

I.

A.  *Procedural History*

A brief description of this matter's procedural history provides a relevant foundation on which to discuss the Motion. Plaintiff filed this action in April 2019, alleging that defendant, who is a Canine Correctional Officer at Sussex I State Prison, unjustifiably set his dog upon plaintiff. [Dkt. No. 11]. The dog allegedly bit plaintiff several times, and defendant allegedly punched plaintiff in the face, knocking him unconscious. Id.

Defendant filed the Motion currently at issue on July 2, 2020, arguing primarily that plaintiff did not exhaust administrative remedies, necessitating dismissal of this action.[1] [Dkt. Nos. 32-33]. Citing the COVID-19 pandemic's effect on his ability to access his institutional law library, plaintiff requested and was allowed many extensions of time to respond to the Motion. [See Dkt. Nos. 38, 40, 41, 42, 47]. After several such requests, on January 26, 2021, the Court, acting sua sponte, stayed this action and instructed plaintiff to file a notice at such time he could visit his law library and more ably respond to the Motion. [Dkt. No. 48].

On September 3, 2021, counsel noted an appearance on plaintiff's behalf and stated that plaintiff was "prepared to respond to defendant's motion for summary judgment [] within thirty [] days." [Dkt. No. 51]. On October 3, 2021, counsel filed plaintiff's response. [Dkt. No. 52]. With respect to defendant's argument that plaintiff had failed to exhaust administrative remedies, counsel averred that plaintiff "might be able to show that an administrative remedy" was unavailable to him, but that he was not required to make such an argument at that juncture. Id. at 8-9. Instead, counsel suggested, "any alleged defalcations in [plaintiff's] use and exhaustion of the administrative grievance procedure [are] questions of fact to be resolved through discovery and trial." Id. at 9.

Defendant has replied to plaintiff's opposition, arguing that plaintiff has already had ample opportunity to conduct discovery and that his failure to do so warrants the Court assessing the Motion without delay. [Dkt. No. 55].

B. *Consideration of Whether Rule 56(d) Relief is Warranted*

Consistent with the above, the Court is faced with the decision whether to defer consideration of defendant's Motion pending discovery. "[S]ummary judgment may be refused where the nonmoving party has not had the opportunity to discover information ... essential to

---

[1] As explained below, defendant also asserts (1) that the complaint fails to allege sufficient facts to support any claim against him with the exception of a claim of excessive force and (2) that he is immune from claims for damages brought against him in his official capacity. [Dkt. No. 33].

2

his opposition." Nguyen v. CNA Corp., 44 F.3d 234, 242 (4th Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n. 5 (1986)). To notify a court that he requires additional time to discover such information, a nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) of the Federal Rules of Civil Procedure (formerly Rule 56(f)), explaining why he "cannot present facts essential to [] [his] opposition" without such additional time. Fed. R. Civ. P. 56(d); Harrods v. Sixty Internet Domain Names, 302 F.3d 214, 244-45 (4th Cir. 2002).

The Fourth Circuit "place[s] great weight on the Rule [56(d)] affidavit," and has gone as far as to state that "the failure to file an affidavit under Rule [56(d)] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Evans v. Tech. Apps. & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996) (citations omitted). See also Cartwright v. Meade, No. 08-7717, 302 F. App'x 132 (4th Cir. Dec. 2, 2008) (affirming district court's decision to grant summary judgment before discovery where pro se prisoner plaintiff "fail[ed] to file an affidavit under Fed. R. Civ. P. 56(f) seeking a continuance to allow him to conduct whatever additional discovery he needed to adequately rebut Defendants' motion for summary judgment").

Even so, the Fourth Circuit has also taken note of cases in which courts have rejected to strictly enforce the Rule 56(d) affidavit requirement. Assessing several such decisions, in Harrods, the Fourth Circuit articulated its standard for reviewing a district court's decision whether to grant Rule 56(d) relief where no Rule 56(d) affidavit had been filed; it held: "If the nonmoving party's objections before the district court served as the functional equivalent of an affidavit ... and the nonmoving party was not lax in pursuing discovery, then we may consider whether the district court granted summary judgment prematurely, even though the nonmovant did not record its concerns in the form of a Rule [56(d)] affidavit." Harrods, 302 F.3d at 244-45.

Taking this precedent into account, this Court concludes that plaintiff has not made an adequate showing that he is entitled to relief under Rule 56(d). As an initial matter, plaintiff has not filed a formal affidavit or declaration as required by the rule. Instead, plaintiff merely states

3

on the last two pages of his opposition to the Motion that he believes additional discovery is appropriate. [Dkt. No. 52] at 8 (emphasis added). This failure to comply with Rule 56(d) cuts against plaintiff. Cf. Charles W. Ross Builder, Inc. v. Olsen Fine Home Bldg., LLC, No. 4:10cv129, 2013 WL 5409649, at *13 (E.D. Va. Sept. 26, 2013) ("Insofar as Plaintiff desired additional discovery, it should have timely filed a Rule 56(d) Affidavit or, at least, filed a motion for additional discovery with the Court. Over the last nine months Plaintiff has done neither. At some point the Court must rule upon the Renewed Motions for Summary Judgment, which were fully briefed as of January 17, 2013. The Court will not allow Plaintiff to further delay a ruling on those motions by burying demands for additional discovery in … memoranda."); Aurel v. Rose, No. ELH-15-2604, 2016 WL 3362539, at *3 (D. Md. Jun. 16, 2016) (observing that the Fourth Circuit has placed "great weight" on the Rule 56(d) affidavit, and proceeding to assess and grant motion for summary judgment where nonmovant failed to file such a document).

Additionally, in stating that he "*might* be able to show that an administrative remedy" was unavailable to him [Dkt. No. 52] at 8-9 (emphasis added), plaintiff effectively concedes the speculative nature of his prospective discovery requests. Courts presented with similarly vague Rule 56(d) motions have not hesitated to decline nonmovants' appeals for deferred adjudication of summary judgment. See, e.g., Gardner v. United States, 184 F. Supp. 3d 175, 184-85 (D. Md. 2016) (denying Rule 56(d) request because it was "grounded in speculation" and "would amount to a fishing expedition"); Wright v. Eastman Kodak Co., 550 F. Supp. 2d 371, 382 (W.D.N.Y. 2008) ("While a [Rule 56(d)] discovery request may be granted to allow a plaintiff to 'fill material evidentiary gaps,' it may not be premised solely on speculation as to evidence which might be discovered[.]") (citation omitted), aff'd, 328 F. App'x 738 (2d. Cir. 2009).

Finally, plaintiff has not shown that he truly lacked the time or opportunity to conduct the discovery necessary to oppose defendant's Motion. In fact, the Court cannot help but conclude that plaintiff has been "lax in pursuing discovery." See Harrods, 302. F.3d at 244-45. Indeed,

4

defendant's Motion has been pending since July 2020, meaning that by the time counsel claimed he was "prepared to respond to defendant's motion for summary judgment," plaintiff had had roughly fourteen months to either propound discovery requests germane to the issues raised in defendant's Motion or to prepare affirmative evidence—even evidence as simple and easily produced as a more detailed affidavit based on his personal knowledge of his grievance appeals[2]—in support of his position.[3] Moreover, in the month between noting his appearance in this action and his filing of the opposition to defendant's Motion, counsel himself could have either prepared oppositional affidavits or requested additional time to do so.

For all of these reasons, the Court concludes that offering plaintiff Rule 56(d) relief is inappropriate and will proceed to adjudicate defendant's Motion without delay.

C.      *Undisputed Facts*

In line with the discussion above, the facts in the following subsection are derived only from the sworn affidavits of E. Witt, the Grievance Coordinator at Sussex I State Prison; and K. Cosby, the Regional Ombudsman for the Eastern Region of the Virginia Department of Corrections. [See Dkt. No. 33-1] ("Witt Aff."); [Dkt. No. 33-2] ("Cosby Aff."). The Court has additionally considered the pro se drafted, handwritten affidavits attached to plaintiff's initial and amended complaints.[4] [See Dkt. No. 1] at 10-11 ("Jenkins Aff. I"); [Dkt. No. 11] at 10-12 ("Jenkins Aff. II").

---

[2] It bears mention that plaintiff had already submitted two sworn affidavits without the assistance of counsel [see Dkt. Nos. 1, 11], supporting the notion that he did not lack the capacity to do so again.

[3] The Court notes that, although it denied a single discovery request from plaintiff, this was so only because defendant had at that point not yet been properly served in this matter. [See Dkt. No. 20]. The Court made no mention of any outright prohibition on discovery processes in that or any other Order.

[4] Because the complaints themselves are not sworn or verified, the allegations they contain may not be considered as evidence at the summary judgment stage. See, e.g., Huff v. Outlaw, No.

5

Plaintiff is an inmate within the Virginia Department of Corrections ("VDOC") who was at all relevant times housed at Sussex I State Prison ("SISP"). Defendant was at all relevant times a Canine Officer at SISP. Plaintiff alleges that, on April 23, 2017, defendant unjustifiably released his dog on plaintiff, who suffered several bite wounds as a result. [Dkt. No. 11] at 5. He additionally alleges that defendant "struck [him] in the face with a closed fist, knocking [plaintiff] unconscious."[5] Id.

On May 16, 2017, plaintiff signed Regular Grievance SXI-17-REG-00075. The grievance office received the document on May 18, 2017, and returned it because plaintiff had not, as is required by VDOC Operating Procedure ("OP") 866.1, also submitted the Informal Complaint that preceded it. Witt Aff. ¶¶ 6, 10. Plaintiff resubmitted his Regular Grievance, attaching his Informal Complaint, on June 6, 2017. See Witt Aff. ¶ 10; Witt Aff. Enclosure ("Enc.") B, p. 27. Former Warden David Zook provided a Level I response on July 5, 2017. The response stated as follows:

> Further investigation has revealed that per the K9 Officer Culpeper, he was patrolling the boulevard when he observed you with your shirt untucked. You were advised to tuck your shirt in, but you became belligerent and very argumentative towards the K9 Officer. Consequently, due to your destructive behavior, K9 Officer Culpeper ordered you to go back to your assigned building. However, you approached him in a threatening manner and refused the order. You grabbed his assigned canine by the mouth and pressed your thumb against the canine's eye. You were given a direct order to stop fighting with the dog and get on the ground but refused to follow. After several orders, a minimal amount of force was used by the Officer to control the situation. At this time, you were on the ground and you were placed in restraint. You were sent to medical for

---

9:09-cv-520, 2010 WL 1433470, at *2 (D.S.C. Apr. 8, 2010) ("[T]he law is clear that a plaintiff cannot rely on an unverified complaint in opposing a motion for summary judgment.").

[5] The complaint additionally states that, after the alleged canine attack, plaintiff received inadequate medical attention for neck and back pain and was placed in a "filthy cell overnight, where [plaintiff] complained about [his] neck and back to no avail." [Dkt. No. 11] at 6. Plaintiff was allegedly later placed in segregation and improperly charged with disciplinary infractions. Id. Because Culpeper, the only named defendant, is not implicated in these claims, the allegations supporting the claims—even to the extent they are not in dispute—have been omitted from the undisputed facts section.

    evaluation and you were treated. You were evaluated and given pain medications but no acute distress was noted. According to Lieutenant Isaac, upon the completion of his investigation it was determined that a minimal amount of force and the proper protocol was followed by K9 Officer Culpeper in handling the situation. There was no evidence of violation of policy.

Witt Aff. ¶ 10; Witt Aff. Enc. C.

    Grievance records at SISP show that plaintiff did not sign, date, or fill in the appeal section on the Level I response. Records possessed by the VDOC's Eastern Region similarly indicate that plaintiff failed to appeal to Level II. Witt Aff. ¶ 11, Enc. C; Cosby Aff. ¶ 5.

    On several occasions, plaintiff mailed VDOC officials inquiring as to the status of his grievance appeal and requesting the return of documents he had mailed to them in the past. Jenkins Aff. ¶¶ 4, 5. Officials responded to plaintiff's letters, stating that they had not received any Level II appeal with respect to the issue grieved. See Cosby Aff. Enc. A.

## II.

    "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the nonmoving party "must show that there is a genuine dispute of material fact for trial… by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

7

## III.

Construed charitably, plaintiff's amended complaint raises claims based on (1) defendant's alleged use of excessive force; (2) the inadequate medical attention plaintiff received after the alleged canine attack; (3) the unsanitary conditions of confinement plaintiff endured; and (4) the baseless disciplinary infractions with which plaintiff was charged. [See Dkt. No. 11]. In the Motion now at issue, defendant argues (A) that there are insufficient factual allegations in support of Claims (2), (3), or (4); (B) that any claim against him in his official capacity must be dismissed based on Eleventh Amendment immunity; and (C) that plaintiff failed to exhaust administrative remedies with respect to Claim (1), the excessive force claim. [Dkt. No. 33]. Defendant's points are addressed in turn.

### A. *Insufficient Factual Allegations*

The Court agrees with defendant that the complaint contains insufficient factual allegations to support a finding of liability against him with respect to Claims (2), (3), or (4). Defendant, who is the only individual named in the amended complaint, is not implicated in any of the allegations supporting those claims. Accordingly, the Court will dismiss Claims (2), (3), and (4) pursuant to 28 U.S.C. § 1915(e).[6]

### B. *Official Capacity Claims*

The Court also agrees that any claim raised against defendant in his official capacity must be dismissed. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."). Plaintiff explicitly raises his claims against defendant in his official and individual capacities, [see Dkt. No. 11] at 11, but, in line with the above, the official capacity claim will be dismissed, leaving the Court left to address only plaintiff's individual capacity claim.

---

[6] "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action of appeal ... fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e).

8

C.  *Failure to Exhaust Administrative Remedies*

Defendant's final argument—that plaintiff failed to exhaust his administrative remedies—requires more significant discussion but is meritorious warrants entry of judgment enter in defendant's favor.

1.  Legal Standard

The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory"). The PLRA requires "proper" exhaustion, which demands full "compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90-91, 93. If a prisoner could properly exhaust his claims without complying with the procedural rules of his prison's grievance system, any prisoner who did not want to participate in the grievance process could avoid it altogether by filing a grievance he knew would be dismissed for procedural deficiency. Id. at 96. To prevent this type of abuse, the Fourth Circuit has held that a prisoner cannot exhaust his administrative remedies by failing to follow the required procedural steps and that the proper return of an improperly filed grievance does not serve to satisfy the exhaustion requirements of the PLRA. Moore v. Bennette, 517 F.3d 717, 729 (4th Cir. 2008).

In this action, where plaintiff was incarcerated within the Commonwealth of Virginia at the time in question, VDOC OP 866.1 outlines the institutional grievance process plaintiff was required to complete before initiating any § 1983 suit. See Witt Aff. ¶ 4. The OP requires offenders to attempt informal resolution of a complaint prior to filing a formal grievance, which is also called a Regular Grievance. If an unfavorable response or no response is returned with

9

respect to an informal complaint, an inmate may file a Regular Grievance with the institution no later than thirty days after the underlying incident. Witt Aff. ¶ 6.

There are three levels of review available for regular grievances: Levels I, II, and II. Level I reviews are conducted by the Warden or Superintendent of the facility where the offender is located. If the offender is dissatisfied with the Level I determination, he may appeal the determination to Level II. Level II reviews are conducted by the Regional Administrator, Health Services Director, Superintendent for Education, or Chief of Operations for Offender Management Services. For most grievable issues, Level II is the final level of review. For those issues appealable to Level III, the Chief of Corrections Operations or Director of the VDOC conducts a review of the regular grievance. The time limit for issuing responses to Level I, II, and III grievances is, respectively, 30 days, 20 days, and 20 days. An offender may appeal a grievance response by signing, dating, and indicating the reasons for his dissatisfaction with the response in the designated area of the response form. He must do so within five calendar days of receipt of the response. Witt Aff. ¶ 7, 11.

2. <u>Analysis</u>

Here, defendant has introduced evidence that plaintiff failed to exhaust the administrative grievance process. First, although defendant states that it is undisputed that plaintiff "properly pursued [the administrative grievance] process through Level I," [Dkt. No. 33] at 9, the Court finds that the record demonstrates otherwise. Level I of the VDOC grievance procedure requires inmates to submit an informal grievance alongside their Regular Grievance within thirty days of the incident complained of. <u>See</u> VDOC OP 866.1 § VI(A)(2)(A) ("The offender must attach any required documentation (Informal Complaint, Notification of Confiscation of Property, Notice of Unauthorized Correspondence, Notification of Publication Disapproval, ICA Documents and/or other appropriate documents), of their attempt to informally resolve the issue.") (emphasis

added); id. at § VI(A)(1) ("Grievances are to be submitted within 30 calendar days from the date of occurrence/incident . . . .").

Plaintiff did not act within this timeline. Indeed, it is undisputed that plaintiff signed and submitted Regular Grievance SXI-17-REG-00075 on May 16, 2017, that the grievance was returned to plaintiff two days later because plaintiff had neglected to attach the informal complaint he had previously filed, and that plaintiff resubmitted the grievance alongside the informal complaint on June 6, 2017. Plaintiff claims to have been attacked on April 23, 2017, and it is thus clear that, by the time plaintiff's Regular Grievance was properly filed, more than thirty days had passed.

Even if one were to assume plaintiff properly exhausted Level I of the grievance process, judgment would still be owed to defendant because the record shows that plaintiff failed to appeal his Level I grievance to Level II. In his Motion, defendant explains the manner in which an inmate can appeal a grievance denial: "An offender may appeal a grievance response by signing, dating, and indicating the reasons for his dissatisfaction with the response in the designated area of the response form." Witt Aff. ¶ 7. Defendant submitted evidence showing that plaintiff did not complete this process and that the Regional Administrator never received any Level II appeal from plaintiff with respect to plaintiff's encounter with defendant. Witt Aff. ¶ 11; Cosby Aff., Enc. A.

A plaintiff opposing an argument that he has failed to exhaust his administrative remedies has two possible means of overcoming summary judgment: first, he may present affirmative evidence—that is to say, more than mere allegations or denials—that he *did* properly exhaust his claim. Such a proffer would create a dispute of material fact that would preclude the Court from granting a defendant's motion. Alternatively, a plaintiff could submit evidence demonstrating that the grievance process was not truly available to him. See Moore, 517 F.3d at 725 (explaining that "when a prisoner, through no fault of his own, was prevented from availing

11

himself of [the grievance procedure]," his failure to complete the process will not bar his claim from being heard in federal court).

Unfortunately, plaintiff has failed to make a showing in either respect. Although plaintiff claims in his amended complaint to have appealed the denial of his Level I grievance, [see Dkt. No. 11] at 3, and alleges in the body of his original and amended complaints that he exhausted administrative remedies, [see Dkt. No. 1] at 5-6; [Dkt. No. 11] at 6-7, these claims are not only unsworn and thus inadmissible at summary judgment, see United States v. White, 366 F.3d 291, 300 (4th Cir. 2004) (unsworn argument does not constitute evidence to be considered in opposition to summary judgment motion), they are conclusory—providing no specific information as to the time or manner in which plaintiff acted to exhaust his claim—and thus insufficient to create a dispute of fact, see, e.g., Wood v. Credit One Bank, 277 F. Supp. 3d 821, 838 n.33 (E.D. Va. 2017) ("At the summary judgment stage, Credit One cannot create a factual dispute by making conclusory allegations.").

And although plaintiff has additionally submitted two sworn statements that *are* admissible, the affidavits make only oblique references to a Level II appeal, stating that plaintiff wrote letters to VDOC officials inquiring as to the status of that appeal. [See Dkt. No. 1] at 10; [Dkt. No. 11] at 10. The affidavits thus do not even nakedly claim that plaintiff correctly exhausted his administrative remedies; they, at best, show that plaintiff inquired as to the status of some hypothetical appeal he believed he lodged. Unfortunately, this indirect evidence, which requires the Court to draw several inferences—i.e., that plaintiff properly filled out the appeal section of the Level I Grievance Response *and* timely mailed the Level II Appeal to the correct address—constitutes only a "mere scintilla" of proof insufficient to overcome the defendant's proffered evidence. See Sandlands C & D LLC v. Cty. of Horry, 737 F.3d 45, 54 (4th Cir. 2013) (stating that, although a district court must "draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere

12

speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence.") (citation omitted); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

Indeed, when held against the physical documents and affidavits submitted by defendant—many of which explicitly demonstrate plaintiff's failure to satisfy VDOC OP 866.1's requirements—plaintiff's passing reference to inquiring about the status of an appeal is clearly insufficient to prevent the entry of judgment against him. See Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

## IV.

Based on the foregoing, plaintiff has made an insufficient showing to overcome defendant's properly-supported Motion for Summary Judgment. Indeed, the admissible evidence does not reveal the existence of any "genuine dispute as to any material fact," and defendant is therefore entitled to judgment in his favor. An appropriate Order will issue alongside this Memorandum Opinion.

Entered this 7th day of Feb. 2022.

Alexandria, Virginia

/s/ Claude M. Hilton
United States District Judge